# NO. 12-21-00197-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JAIRO FRANCISCO SOLANO, APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS, APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Jairo Francisco Solano appeals his conviction for engaging in organized criminal activity. He presents six issues on appeal. We modify and affirm as modified.

## BACKGROUND

Clint Lee, a Wal-Mart global investigator, received an email alert on December 20, 2019, regarding a new Sam's Club membership to purchase "high-end phones" in which the billing address and Sam's Club store were not in the same geographical area. Lee reviewed the surveillance video and observed Appellant purchase an iPhone at the Tyler Sam's Club on Gregory Kyle's account. He then learned that Appellant purchased another iPhone on the same account at a local Wal-Mart earlier that day. Lee continued to review Appellant's recent transactions at Wal-Mart and Sam's Club stores, which included more than fifty iPhone purchases. Lee contacted Jeff Roberts, a financial crimes investigator with the Tyler Police Department. Lee also spoke with Tyler Police Sergeant Ethan Johnson, told him about his investigation, and gave him a description of Appellant.

Sergeant Johnson observed Appellant leave the Sam's Club parking lot and initiated a traffic stop. Another officer had called in Appellant's license plate number and the plate number was returned as invalid. Johnson stopped the vehicle because "the temporary tag did not have a

return." Johnson later learned that dispatch mistakenly ran the wrong tag number. During Johnson's investigation, Appellant admitted purchasing a phone at Sam's Club. When asked for the receipt and contract, Appellant showed Johnson a contract for an iPhone under Olga de Avila's account and claimed he threw the Sam's Club contract in the trash. Back at the Sam's Club parking lot, another officer found a plastic bag with numerous receipts and contracts, all dated December 19 and 20, under AT&T wireless accounts belonging to Gregory Kyle and Amit Chadha. The three victims later confirmed Appellant is not an authorized user on their respective accounts and did not have permission to either upgrade or purchase phones on their behalf. Police secured a search warrant for Appellant's vehicle, and a subsequent search revealed nineteen new iPhones in his car.

An investigation revealed that Appellant was involved in a scheme involving at least ten other people in which they hacked wireless accounts and made unauthorized phone purchases. They then sold the phones for a profit.

Appellant was subsequently charged by indictment with engaging in organized criminal activity. The underlying offense being fraudulent possession of identifying information. Appellant pleaded "not guilty," and the matter proceeded to a jury trial. The jury ultimately found Appellant "guilty" as charged. Following the punishment phase, the jury assessed punishment at 30 years imprisonment and a $10,000 fine. This appeal followed.[1]

---

[1] We begin by noting that Appellant's brief is practically devoid of references to the record. And his fact-intensive first issue lacks record references completely. *See* TEX. R. APP. P. 38.1 ("Argument. The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record") (emphasis added). An appellant waives an issue on appeal if he does not adequately brief that issue by not providing supporting arguments, substantive analysis, and appropriate citations to authorities and to the record. *Chaves v. State*, 630 S.W.3d 541, 555 (Tex. App.–Houston [1st Dist.] 2021, no pet.) (citing *Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex. Crim. App. 2011); *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008); *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (defendant inadequately briefed complaint where he neglected to present argument with citation to appropriate authority)); *see also Ray v. State*, 176 S.W.3d 544, 553 n.7 (Tex. App.–Houston [1st Dist.] 2004, pet. ref'd).

As the Texas Court of Criminal Appeals has emphasized, an appellate court has no obligation to construct and compose issues, facts, and arguments with appropriate citations to authorities and the record for the appellant. *See Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017); *Busby*, 253 S.W.3d at 673. A brief that fails to apply the law to the facts does not comply with Texas Rule of Appellate Procedure 38.1 and presents nothing for our review. *See Swearingen v. State*, 101 S.W.3d 89, 100 (Tex. Crim. App. 2003). However, because we are able to construe Appellant's arguments in this case, we will consider them in the interest of justice.

In his first issue, Appellant contends the evidence is insufficient to support his conviction. Specifically, he argues the evidence fails to prove he intended to conspire with two or more people.

**Standard of Review**

The *Jackson v. Virginia*[2] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson*, 443 U.S. at 315–16, 99 S. Ct. at 2786–87; *see also Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186.

A jury is free to believe all or any part of a witness's testimony or disbelieve all or any part of that testimony. *See Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.–Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Rodriguez v. State*, 521 S.W.3d 822, 827 (Tex. App.–Houston [1st Dist.] 2017, no pet.) (citing *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011)). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. *Id.* at 15. Juries are not permitted

---

[2] 404 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

to reach conclusions based on mere speculation or factually unsupported inferences or presumptions. *Id.* An inference is a conclusion reached by considering other facts and deducing a logical consequence from them, while speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. *Id.* at 16.

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

## Applicable Law

A person commits the offense of engaging in organized criminal activity if he, with intent to establish, maintain or participate in a combination or in the profits of a combination, commits or conspires to commit an enumerated offense. *See* TEX. PENAL CODE ANN. § 71.02(a) (West Supp. 2021). Fraudulent possession of identifying information is an enumerated offense. *Id.* § 71.02(a)(8). Section 32.51(b)(1) of the Texas Penal Code states: "A person commits an offense if the person, with the intent to harm or defraud another, obtains, possesses, transfers, or uses an item of . . . identifying information of another person without the other person's consent or effective consent." *Id.* § 32.51(b)(1) (West Supp. 2021). "'Identifying information' means information that alone or in conjunction with other information identifies a person, including a person's . . . name and date of birth . . . social security number or other government-issued identification number." *Id.* § 32.51(a)(1)(A)(E). The offense is a second degree felony if the number of items obtained, possessed, transferred, or used is more than ten but less than fifty. *Id.* § 32.51(c)(3).

Section 71.01(a) defines a "combination" as three or more persons who collaborate in carrying on criminal activities. *Id.* § 71.01(a) (West 2011). The Court of Criminal Appeals has construed this language as requiring a "continuing course of criminal activities." *Nguyen v. State*, 1 S.W.3d 694, 697 (Tex. Crim. App. 1999); *Lashley v. State*, 401 S.W.3d 738, 743 (Tex. App.–Houston [14th Dist.] 2013, no pet.). It involves more than the intent to merely commit an enumerated offense, a plan to commit a single act, or proof of working jointly to commit a crime—it requires proof of continuity. *Hart v. State*, 89 S.W.3d 61, 63–64 (Tex. Crim. App.

4

2002); ***Nguyen***, 1 S.W.3d at 696–97.  The activities do not have to individually be criminal offenses to satisfy the statutory requirement, and a single criminal offense can be sufficient. ***Nguyen***, 1 S.W.3d at 697; *see also* ***Dowdle v. State***, 11 S.W.3d 233, 236 (Tex. Crim. App. 2000) (continuous activities after shooting included fleeing, regrouping, discussing plan of action, and traveling to another country with stolen goods).  However, the statute requires proof of intended continuity, i.e., that "the appellant intended to establish, maintain, or participate in a group of three or more, in which the members intend to work together in a continuing course of criminal activities" that goes beyond a single, *ad hoc* effort.  ***Nguyen***, 1 S.W.3d at 697.  Evidence must be offered that allows a jury to infer that the group intended to continue engaging in illegality over a period of time.  *See* ***Lashley***, 401 S.W.3d at 745.

## Analysis

Appellant contends the evidence is insufficient to establish "ongoing combination between [Appellant] and any conspirators."

Gabriel Daigle, a senior investigator with AT&T's asset protection department, testified and detailed the scheme perpetrated by Appellant and his counterparts.  Daigle's investigation began when he was contacted by Lee.  Lee provided Daigle with a list of accounts on which 71 devices had been obtained.  Daigle identified the accounts affected and looked for fraudulent activity.  Prior to the fraud claims, a new user (Appellant) was added to the account.  The account notes showed that someone claiming to be from AT&T contacted the account holder and tricked the holder into providing their passcode and PIN.  Appellant served as the "runner," traveling to different stores and purchasing new iPhones on the hacked accounts.  A "handler" communicated the PIN to Appellant so he could complete the purchase at the store.  Daigle estimated that, based on his investigation, Appellant was working with a group of approximately ten people and a fake call center in the Dominican Republic.  Appellant and his counterparts could then sell the iPhones overseas for between $4,000 and $5,000 each.  Daigle also testified that he found fraudulent activity involving Appellant starting approximately five months prior to his arrest.

Excerpts of messages from WhatsApp sent from Appellant's phone also detailed the scheme.  In those messages, Appellant stated that he lived off the money he made from the operation.

The evidence at trial showed that Appellant used the identifying information of Olga de Avila, Gregory Kyle, and Amit Chadha, without their authorization, to obtain cellular phones from Wal-Marts and Sam's Club from December 19 and 20, 2019. The evidence also showed that Appellant was assisted by at least three other people: a hacker to gain the identifying information and access the AT&T wireless accounts, an associate to contact the victims and obtain the verification PIN numbers, and a third person who sent the PIN numbers to Appellant while he purchased the new iPhones. Furthermore, the evidence showed that Appellant engaged in this scheme over a period of several months. As a result, a rational jury could have found that Appellant participated in a combination constituting a continuing course of criminal activities. *See* TEX. PENAL CODE ANN. §§ 71.02(a), 71.01(a); *Nguyen*, 1 S.W.3d at 697. Accordingly, the jury could find, beyond a reasonable doubt, that Appellant committed organized criminal activity. Because the evidence is sufficient to support Appellant's conviction, we overrule his first issue.

## MOTION TO SUPPRESS

In his second issue, Appellant urges the trial court erred when it denied his motion to suppress. He contends the officer lacked a reasonable basis for the traffic stop and the length of the detention was unreasonable. He urges all evidence obtained as a result of the stop should have been excluded.

### Standard of Review and Applicable Law

A criminal defendant who alleges a Fourth Amendment violation bears the burden of producing some evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007). A defendant meets his initial burden of proof by establishing that a search or seizure occurred without a warrant. *Id*. The burden then shifts to the state to prove that the search or seizure was nonetheless reasonable under the totality of the circumstances. *Id*. at 672-73.

Reasonable suspicion exists if a law enforcement officer has specific articulable facts that, when combined with rational inferences from these facts, would lead him to reasonably suspect that a particular person has engaged, is engaging, or soon will be engaging in criminal activity. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). In determining whether reasonable suspicion existed, courts analyze the objective facts surrounding the detention, not the

6

officer's subjective reasons for it. *Garcia v. State*, 827 S.W.2d 937, 943-44 (Tex. Crim. App. 1992). The state need not show with absolute certainty that an offense occurred to show reasonable suspicion. *Garcia*, 43 S.W.3d at 530.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). When deciding a motion to suppress evidence, a trial court is the exclusive trier of fact and judge of the witnesses' credibility. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or disbelieve all or any part of a witness's testimony. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

We review de novo whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion of criminal activity. *State v. Cortez*, 543 S.W.3d 198, 204 (Tex. Crim. App. 2018). We uphold a trial court's ruling on a motion to suppress under any legal theory supported by the facts. *Alford v. State*, 400 S.W.3d 924, 929 (Tex. Crim. App. 2013).

**Analysis**

During trial, Appellant urged that the evidence obtained as a result of the traffic stop should be excluded. He urged that the officer lacked a reasonable basis for the stop and that his detention was illegally prolonged. The trial court denied the motion to suppress.

Sergeant Johnson testified that he was contacted by Lee regarding an investigation that Appellant was engaging in fraud at the Tyler Sam's Club. After Lee gave Johnson a description of Appellant, Johnson initiated a traffic stop when he observed Appellant leaving the Sam's Club parking lot. Appellant's license plate number had been returned as invalid. Although Johnson stopped the vehicle because "the temporary tag did not have a return," he later learned that dispatch mistakenly ran the wrong tag number. Appellant admitted to Johnson that he purchased a phone at Sam's Club and produced a contract for an iPhone under de Avila's account. Appellant claimed he threw the Sam's Club contract in the trash. At the Sam's Club parking lot,

an officer found a plastic bag with numerous receipts and contracts, all dated December 19 and 20, under AT&T wireless accounts belonging to Gregory and Chadha. Pursuant to a search warrant, officers searched Appellant's vehicle and located nineteen new iPhones.

We first note that Appellant has not challenged the trial court's finding that Sergeant Johnson reasonably suspected Appellant committed fraud. He only challenges the finding that Johnson reasonably believed Appellant to be driving with an invalid temporary license plate. "If the appellant fails to argue a theory of law applicable to the case on appeal, that argument is forfeited." *State v. Copeland*, 501 S.W.3d 610, 613 (Tex. Crim. App. 2016). An appellant procedurally defaults a theory of law applicable to the case if the appellant fails to advance that argument on appeal. *See id.* at 614. Under these circumstances, the court of appeals will uphold the trial court's ruling without considering the merits of the unchallenged basis for the ruling. *See State v. Copeland*, No. 13-11-00701-CR, 2015 WL 7039545, at *3 (Tex. App.–Corpus Christi Nov. 12, 2015) (mem. op., not designated for publication), *aff'd*, 501 S.W.3d at 614.

Nevertheless, a detention may be prolonged "beyond the point when the purpose of the initial stop is complete if there is a reasonable suspicion to believe another offense has been or is being committed." *Lambeth v. State*, 221 S.W.3d 831, 836 (Tex. App.—Fort Worth 2007, pet. ref'd). Sergeant Johnson testified that the stop lasted approximately thirty minutes. During that time, he questioned Appellant regarding the alleged fraud at Sam's Club. He also discussed the documentation Appellant gave him about another iPhone under a different account. Johnson assigned another officer to search for the receipt and contract evidence Appellant claimed to have discarded in the Sam's Club parking lot. Appellant's handing Johnson a phone that was not contracted under his name confirmed the suspicions relayed by Lee and justified Appellant's continued detention for a fraud investigation.

Accordingly, the trial court could reasonably conclude that Johnson had specific articulable facts that, when combined with rational inferences from these facts, led him to reasonably suspect that Appellant had engaged, was engaging, or soon would be engaging in criminal activity, and that Appellant's detention was not illegally prolonged. *See Garcia*, 43 S.W.3d at 530; *see also Lambeth*, 221 S.W.3d at 836. For these reasons, we overrule Appellant's second issue.

## CHARGE ERROR

In his third issue, Appellant contends he was harmed when the trial court denied his request for a jury instruction under Article 38.23 of the Texas Code of Criminal Procedure.

## Standard of Review

We review a trial court's refusal to give an instruction in its charge for an abuse of discretion. *See Steele v. State*, 490 S.W.3d 117, 130 (Tex. App.–Houston [1st Dist.] 2016, no pet.). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

We review alleged jury charge error in two steps—we first determine whether error exists, and, if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Joshua v. State*, 507 S.W.3d 861, 863–64 (Tex. App.–Houston [1st Dist.] 2016, no pet). The degree of harm required for reversal depends on whether the charge error was preserved in the trial court. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth analysis for determining whether jury charge error requires reversal). If the charge error properly has been preserved by an objection or request for instruction, reversal is required if the appellant suffered "some harm" from the error. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013); *see Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). When the defendant fails to object or states that she has no objection to the charge, we will not reverse for jury charge error unless the record shows the defendant suffered egregious harm. *See Ngo*, 175 S.W.3d at 743–44. Thus, in considering Appellant's issue, we first must determine if there was error in the charge. *See Joshua*, 507 S.W.3d at 864. Only if we find error do we address whether Appellant was harmed sufficiently to require reversal. *Id*.

## Applicable Law

Under Texas law, the Code of Criminal Procedure requires trial courts to exclude evidence in a trial if the State obtained the evidence by violating the law. TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2018). But if the evidence shows that a fact issue exists about whether the police conduct was illegal, the trial court must submit an instruction to the jury that informs the jury that "if it believes, or has a reasonable doubt, that the evidence was obtained in

violation of the provisions of this Article, . . . [it must] disregard any such evidence so obtained." *Id*. art. 38.23(a).

There must be a genuine dispute about a material fact issue before an Article 38.23 instruction is warranted. *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). The defendant must demonstrate that (1) the evidence heard by the jury raises an issue of fact, (2) the evidence on that fact is affirmatively contested, and (3) the contested factual issue is material to the lawfulness of the challenged conduct in obtaining the evidence. *Id*. at 510. If there is no disputed issue of material fact, the legality of the challenged conduct is a question of law for the trial court. *Id*. And if other undisputed facts are sufficient to establish the lawfulness of the conduct, the contested factual issue is not material, and the defendant is not entitled to a jury instruction on the fact issue. *See id*. at 510–11.

To raise a disputed fact issue, there must be some affirmative evidence that contradicts the existence of that fact. *Id*. at 513. This evidence can come "from any source," regardless of whether it is "strong, weak, contradicted, unimpeached, or unbelievable." *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004) (quoting *Wilkerson v. State*, 933 S.W.2d 276, 280 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd)). A defendant's questions on cross-examination cannot, by themselves, raise a disputed fact issue. *Madden*, 242 S.W.3d at 515. However, the witnesses' answers to those questions might raise a fact issue. *Id*. at 513.

## Analysis

Appellant argues the trial court erred in denying his Article 38.23 instruction because a factual issue existed regarding the legality of Appellant's initial detention for a traffic violation and his continued detention for the officer's investigation. Specifically, he contends the jury could have disbelieved Johnson's testimony regarding dispatch's statement that the temporary license plate was invalid.

At trial, Appellant requested the Article 38.23 instruction for the jury to determine whether his detention during the stop lasted for an "unreasonable length of time." Fourth Amendment objective reasonableness is a question of law, not a question of fact. *See Siddiq v. State*, 502 S.W.3d 387, 405 (Tex. App.—Fort Worth 2016, no pet.). The jury, which is not an "expert on legal terms of art or the vagaries of the Fourth Amendment … cannot be expected to decide whether the totality of certain facts do or do not constitute 'reasonable suspicion' under the law." *Madden*, 242 S.W.3d at 511. "It is the trial judge who decides what quality and

quantum of facts are necessary to establish 'reasonable suspicion.'" ***Id***. "Only if one or more of those necessary facts are disputed does the judge ask the jury to decide whether the officer's belief in those facts was reasonable." ***Id***. Because an Article 38.23 instruction is only warranted when there is a disputed fact issue, which does not exist in this case, the trial court did not err in refusing to include it in the jury charge. ***Siddiq***, 502 S.W.3d at 405; *see* ***Madden***, 242 S.W.3d at 511. We overrule Appellant's third issue.

## HEARSAY

In his fourth issue, Appellant contends he suffered harm when the trial court overruled his hearsay and Confrontation Clause objections to the WhatsApp messages.

### Standard of Review and Applicable Law

A trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard. ***Moses v. State***, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); ***Manuel v. State***, 357 S.W.3d 66, 74 (Tex. App.–Tyler 2011, pet. ref'd). If the ruling is within the zone of reasonable disagreement, an appellate court will not disturb it. ***Manuel***, 357 S.W.3d at 74.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). This includes both oral and written expressions. TEX. R. EVID. 801(a)(1). "An out-of-court statement which is not offered to prove the truth of the matter asserted therein, but is offered for some other reason, is not hearsay." ***Jones v. State***, 466 S.W.3d 252, 263 (Tex. App.–Houston [1st Dist.] 2015, pet. ref'd); ***Stafford v. State***, 248 S.W.3d 400, 407 (Tex. App.–Beaumont 2008, pet. ref'd) (citing ***Guidry v. State***, 9 S.W.3d 133, 152 (Tex. Crim. App.1999)). A statement is not hearsay if its relevancy does not hinge on its truthfulness. ***Johnson v. State***, 425 S.W.3d 344, 346 (Tex. App.–Houston [1st Dist.] 2011, pet. ref'd). Statements that constitute admissions by a party opponent are not hearsay. *See* TEX. R. EVID. 801(e)(2). These include a party's own statement, a statement that he has adopted or in which he has manifested a belief in its truth, and a statement made by a coconspirator during the course and in furtherance of the conspiracy. *See* TEX. R. EVID. 801(e)(2)(A), (B), (E); ***Trevino v. State***, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999).

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the

witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause bars the admission of out-of-court testimonial hearsay statements of a witness unless (1) the witness is unavailable to testify and (2) the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 53–54, 124 S. Ct. 1354, 1365-66, 158 L. Ed. 2d 177 (2004); *Render v. State*, 347 S.W.3d 905, 917 (Tex. App.—Eastland 2011, pet. ref'd). "Post-*Crawford*, the threshold question in any Confrontation Clause analysis is whether the statements at issue are testimonial or nontestimonial in nature." *Render*, 347 S.W.3d at 917.

Generally speaking, a hearsay statement is testimonial when the surrounding circumstances objectively indicate that the primary reason the statement was made was to establish or prove past events potentially relevant to later criminal prosecution. *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008) (citing *Davis v. Washington*, 547 U.S. 813, 822–23, 126 S. Ct. 2266, 2273-74 165 L. Ed. 2d 224 (2006)). The Supreme Court has not provided a comprehensive definition to be used when determining whether statements are testimonial. *Id.*; *Wells v. State*, 241 S.W.3d 172, 175 (Tex. App.—Eastland 2007, pet. ref'd). However, it has identified three kinds of statements that could be regarded as testimonial: (1) ex parte in-court testimony or its functional equivalent that declarants would reasonably expect to be used prosecutorially; (2) statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and (3) statements that were made under circumstances that would lead an objective witness to reasonably believe that the statements would be available for use at a later trial. *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010). We review a Confrontation Clause ruling de novo. *See De La Paz*, 273 S.W.3d at 680.

## Analysis

At trial, the State offered excerpts of four WhatsApp conversations that had been found on Appellant's phone. They consisted of an exchange between Appellant and his handler during the transactions in several stores, a conversation describing his role in the combination prior to the Tyler offenses, and progress updates and payment arrangements between Appellant and a coconspirator. When the messages were offered, Appellant objected that they were inadmissible hearsay and violated his right to confrontation. The trial court overruled the objections. However, Appellant failed to object when the witness testified to the contents of the messages and his interpretation of them. Absent a running objection or objection made outside the

presence of the jury, "the law in Texas requires a party to continue to object each time inadmissible evidence is offered." ***Ethington v. State***, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991); ***Leday v. State***, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). We also note that Appellant made global hearsay objections without distinguishing between the allegedly inadmissible statements and the admissible portions. *See **Wilkinson v. State***, 523 S.W.3d 818, 826-27 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). Therefore, Appellant has failed to preserve this issue for review.

Even had Appellant preserved this issue, the trial court did not err in overruling his objections. At the time the exhibits were admitted, the evidence established that the messages originated from a phone number associated with a phone belonging to Appellant. Detective Roberts also testified that the statements made were corroborated by dates and times of surveillance showing Appellant. The phone at issue was found in Appellant's front seat. *See **Black v. State***, 358 S.W.3d 823, 832 (Tex. App.—Fort Worth 2012, pet. ref'd) (requiring showing that the appellant wrote or ratified text messages or that messages were written while phone in his possession to establish the appellant as declarant under the hearsay rule). As such, the statements contained in the messages were statements by a party opponent. *See* TEX. R. EVID. 801(e)(2)(A), (B), (E); ***Trevino***, 991 S.W.2d at 853.

Regarding the Confrontation Clause argument, "testimonial" statements are typically solemn declarations made for the purpose of establishing some fact. *See **Russeau v. State***, 171 S.W.3d 871, 880 (Tex. Crim. App. 2005). The WhatsApp messages in this case are informal, and their subject and method of communication weigh against a finding that they are testimonial statements. *See **Crawford***, 541 U.S. at 51, 124 S. Ct. 1354 (noting that testimonial statements are typically "formalized" materials that "were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" as opposed to informal text messages); ***Bryant v. State***, No. 01-14-00963-CR, 2015 WL 9478194, at *5–6 (Tex. App.—Houston [1st Dist.] Dec. 29, 2015, pet. ref'd.) (mem. op., not designated for publication) (same). Furthermore, many of the WhatsApp messages were between Appellant and other individuals involved in the scheme. A coconspirator's statements in furtherance of the conspiracy are generally considered nontestimonial. *See **Crawford***, 541 U.S. at 56, 124 S. Ct. 1354. Accordingly, the trial court did not err by overruling Appellant's Confrontation Clause objection to the admission of the messages.

13

For these reasons, we overrule Appellant's fourth issue.

## BILL OF COSTS

In his fifth and sixth issues, Appellant alleges items in the bill of costs were erroneously included; specifically, that the fine assessed should not be included in the bill of costs (issue five) and the Local Consolidated Fee on Conviction of Felony does not apply to his case (issue six).

The Local Consolidated Fee on Conviction of Felony applies only to defendants who are convicted of offenses committed on or after January 1, 2020. *See **Hayes v. State***, No. 12-20-00222-CR, 2021 WL 1418400, at *2 (Tex. App.—Tyler Apr. 14, 2021, no pet.) (mem. op., not designated for publication) (citing TEX. LOC. GOV'T CODE ANN. § 134.101 (West 2021)). Section 134.101 assesses an additional $105 fee for a person who is convicted of a felony. *See* TEX. LOC. GOV'T CODE ANN. § 134.101(a). That fee is to be allocated to the following specific accounts and funds: the clerk of the court account, the county records management and preservation fund, the county jury fund, the courthouse security fund, the county and district court technology fund, and the county specialty court account. *See id.* § 134.101(b).

In the instant case, the commission dates for the offense are December 19 and 20, 2019. The judgment of conviction reflects that the trial court assessed $251.50 in court costs. The judgment includes a document identified as "Attachment A Order to Withdraw Funds," which states that Appellant has incurred "[c]ourt costs, fees and/or fines and/or restitution" in the amount of $251.50. The certified bill of costs itemizes the court costs imposed, which total $10,251.50 with a $10,251.50 balance remaining. The certified bill of costs includes the following costs assessed pursuant to Section 134.101: $40.00 Clerk of the Court; $4.00 County and District Court Technology Fund; $1.00 County Jury Fund; $25.00 County Records Management and Preservation; $25.00 County Specialty Court Account; and $10.00 Courthouse Security Fund. *See id.* The sum of these costs is $105.00. Because the offense in this case was committed before January 1, 2020, Appellant is not obligated to pay the "Local Consolidated Fee on Conviction of Felony." *See **Hayes***, 2021 WL 1418400, at *2. Accordingly, we will modify the trial court's judgment and Order to Withdraw to reflect the removal of these fees. *See* TEX. R. APP. P. 43.2(b); ***Reyes v. State***, 324 S.W.3d 865, 868 (Tex. App.–Amarillo 2010, no pet.). Appellant's sixth issue is sustained.

14

The bill of costs also includes the $10,000 fine imposed by the trial court. A bill of costs must be in writing and contain "the items of cost." TEX. CODE CRIM. PROC. ANN. art. 103.001 (West 2018). Fines are punitive and intended to be part of the convicted defendant's sentence. *See Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011). Court costs, however, are "compensatory in nature" and are "a non-punitive recoupment of the costs of judicial resources expended in connection with the trial of the case." *Id.*; *Williams v. State*, 495 S.W.3d 583, 590 (Tex. App.—Houston [1st Dist.] 2016), *pet. dism'd*, 2017 WL 1493488 (Tex. Apr. 26, 2017). Accordingly, fines are fundamentally different than court costs. Thus, we reform the bill of costs to delete the fine. *See Williams*, 495 S.W.3d at 591. Appellant remains obligated to pay the $10,000 fine reflected in the judgment of conviction. *See* TEX. R. APP. P. 43.2(b). We sustain Appellant's fifth issue.

## DISPOSITION

Having sustained Appellant's sixth issue, we *modify* the trial court's judgment and withdrawal order, along with the corresponding bill of costs, to reflect that the amount of court costs is $146.50. And having sustained his fifth issue, we likewise *modify* the bill of costs to delete the fine. Having overruled Appellant's first, second, third, and fourth issues, we *affirm* the judgment *as modified*.

JAMES T. WORTHEN
Chief Justice

Opinion delivered August 17, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

15



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 17, 2022**

**NO. 12-21-00197-CR**

**JAIRO FRANCISCO SOLANO,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-1196-20)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, it is the opinion of this court that the judgment of the court below should be modified and as modified, affirmed.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment and withdrawal order, along with the corresponding bill of costs, of the court below be **modified** to reflect that the amount of court costs is $146.50, and the bill of costs be **modified** to delete the fine; in all other respects, including the $10,000.00 fine reflected in the judgment of conviction, the judgment of the trial court is **affirmed**; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*